***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EUSTACE CROMER,

                    Petitioner,

                v.

GREG BARTKOWSKI, et al.,

                    Respondents.

Civil Action No. 11-1915 (SDW)

**OPINION**

April 30, 2015

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Eustace Cromer ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging his state court conviction. (ECF No. 1). Respondents filed a response (ECF No. 15, 16, 17), to which Petitioner replied (ECF No. 24). For the following reasons, the Court will dismiss the petition as time barred and no certificate of appealability shall issue.

**I.   BACKGROUND**

As this Court will dismiss this petition as time barred, only a brief recitation of the facts of the underlying conviction is necessary. The New Jersey Appellate Division summarized the facts of Petitioner's criminal case as follows:

> [Petitioner] was convicted of conspiracy to commit murder, attempted murder, aggravated assault,[] possession of a firearm for unlawful purpose, and unlawful possession of a firearm. After merge, he was sentenced to fifty-five years with twenty years of parole ineligibility on the attempted murder conviction and a

>concurrent sentence on the unlawful possession violation.
>
>The evidence at trial revealed that Bryant Jackson's car was shot at on the Garden State Parkway [on October 17, 1995]. A passenger in Jackson's car, Dierdre Mullen, recognized "Ditto" as the shooter. "Ditto" is a nickname used by [Petitioner].
>
>Mullen did not testify at the trial. Other passengers, victims Jackson and Checora Washington, did testify, but repudiated their similar prior identifications of defendant.[1] However, their identifications were admitted as prior inconsistent statements after a *Gross* hearing. *See State v. Gross*, 121 N.J. 1 (1990). Moreover, Jackson identified defendant while in the Newark jail, and defendant was well known to Washington. "Ditto" was her nephew.
>
>On direct appeal, [the New Jersey Appellate Division] found the identification evidence admissible and the evidence sufficient to sustain the conviction.
>
>In his [post conviction relief] petition, [Petitioner] claimed defense counsel did not investigate the alibi defense, presented no notice of alibi, and called no alibi witness. He also claimed that counsel did not investigate the claim that Jackson was shot by "Shariff." He further claimed that counsel failed to impeach Jackson with respect to the fact that "Shariff" was the shooter.

*State v. Weeks*, No. A-2343-07T4, 2009 WL 3488720, at *1 (N.J. App. Div. Oct. 29, 2009), *certif. denied*, 201 N.J. 497 (2010).[2]

Following his conviction, the trial court in this matter entered judgment against him on

---

[1] All three passengers, who knew Petitioner well, provided the New Jersey State Police with detailed descriptions of Petitioner as the shooter on the night of the shooting, and also identified his photograph when presented with a photo array. (*See* PCR Opinion, Attached as Document 26 to ECF No. 16, at 7).

[2] "Weeks" is a pseudonym of Petitioner, Eustace Cromer, and this case is fully captioned *State v. Eustace Weeks a/k/a Eustace Cromer*.

March 12, 1999.  (Document 12 attached to ECF No. 16).[3]  Petitioner filed a timely notice of appeal on May 28, 1999.  (Document 13 attached to ECF No. 16).  The New Jersey Appellate Division affirmed Petitioner's conviction by way of an opinion dated January 23, 2001.  (Document 18 attached to ECF No. 16).  The New Jersey Supreme Court denied petitioner's petition for certification on April 3, 2001.  (Document 20 attached to ECF No. 16).  Petitioner did not file a petition for certiorari.  On September 11, 2001, 161 days after certification was denied and 71 days after the 90 day period for filing a petition for certiorari had passed, Petitioner filed his initial petition for post-conviction relief.  (Document 21 attached to ECF No. 16).  For various reasons, the petition was not heard by the trial court until 2007.

Finding that Petitioner had pled a prima facie case for post-conviction relief, the trial court held an evidentiary hearing on the petition limited to Petitioner's ineffective assistance of counsel arguments on April 19, 2007.  (Document 2 attached to ECF No. 17).  At the hearing, Petitioner testified that he had informed his attorney prior to trial and on the mornings of all court hearings that he had an alibi and witnesses who would testify to that alibi.  (*Id.* at 13-16).  Petitioner stated that, on the night of the shooting, he had stayed in his apartment with his ex-girlfriend, his friend Al-Tariq Little, and Little's former girlfriend "Kiki."  (*Id.*).  Petitioner claimed that they had spent the entire night of the shooting in-doors at his apartment, and had not left until the following morning.  (*Id.* at 14).  Petitioner also testified that he had told his trial counsel that the shooter had been another individual named "Shariff" who had been fighting with the victim prior to the

---

[3] The State's exhibit numbers do not line up with the ECF document numbers as the State has two documents listed as Exhibit 9.  As such, this Court uses the ECF Document numbers when referring to the attachments to ECF No. 16.

shooting, and that the shooter had admitted his action to the victim. (*Id.* at 11).

Petitioner also called Al-Tariq Little as a witness during the PCR hearing. Little testified that he had been with Petitioner on the night of the shooting, and that they had stayed indoors all night drinking and smoking marijuana. (*Id.* at 25-26). Little also testified that he had never spoken with an investigator about the case until the onset of the PCR proceedings in 2007. (*Id.* at 26-27). On cross examination, Little testified that during the twelve years between the shooting in October of 1995 and the PCR hearing in April of 2007, he had made no efforts to clear his friends name or otherwise testify as to Petitioner's alibi claims. (*Id.* at 29). Little also testified that the reason he had not come forth was because he had had "warrants" out for his arrest at the time of trial, and he had never been called as a witness. (*Id.* at 29-30). Little then admitted that Petitioner had never asked him to "come in and clear [his] name" or ask him to be an alibi witness in his criminal trial. (*Id.* at 30). Upon questioning by the PCR Court, Little also stated that he had never been asked to aid Petitioner even though he had lived with Petitioner between the 1995 shooting and Petitioner's trial in 1999. (*Id.* at 31-32).

Petitioner also called the victim, Bryant Jackson, as a witness in the PCR proceedings. Jackson testified, as he had at trial, that his initial identification of Petitioner as his shooter was incorrect, and that he had in fact been shot by someone named "Shariff" who he allegedly knew well, but whose last name or address was unknown to him. (*Id.* at 33-40). Jackson also testified that "Shariff" had directly admitted that he had shot Jackson as part of an ongoing "turf war" between the two. (*Id.* at 34-35). Indeed, Jackson testified that he still saw and spoke with "Shariff," having just spoken with him, apparently amicably, at the barber shop the day before the PCR hearing. (*Id.*). Jackson also testified that, a week prior to his initial identification of

4

Petitioner as his shooter, "Shariff" had directly threatened his life, a point he did not mention to authorities following the shooting. (*Id.* at 39). Finally, on cross examination Jackson testified that he had known Petitioner very well at the time of his initial shooting, and that he had made his initial identification within hours of the shooting and long before making the "Shariff" claim about which he testified at trial. (*Id.* at 41-43).

Although Petitioner had apparently intended to call his ex-girlfriend, Shakeeda Covington, as a witness during the hearing, she could not be found. (*Id.* at 5-6, 44-46). Ms. Covington purportedly would also have testified as to the alibi Petitioner now claimed he had raised to his trial counsel, but she failed to appear in court and testify in spite of attempts to locate her throughout the day of the PCR hearing. (*Id.* at 44-46).

His final alibi witness unavailable, Petitioner finally called his trial attorney. His former attorney, Michael J. DeBliss, Jr., testified that he could not clearly remember the case given the twelve year intervening period and the large number of cases he had tried during that period. (*Id.* at 49-64). DeBliss testified that he was assigned this case as a pool case through the Public Defender's office, and as such the file was maintained and kept by the Public Defender, and not by him. (*Id.* at 49-52, 64-65). While DeBliss stated that he had no independent memory of the case aside from what he read in the paperwork presented to him, documentary evidence was provided which indicated that DeBliss had sent an investigator to interview the victim, Jackson, but the investigator had been unable to contact or speak with Jackson after multiple attempts. (*Id.* at 51-52).

The court denied Petitioner's PCR petition by way of an order and opinion entered on August 31, 2007, in which the PCR judge separately, and thoroughly, analyzed each witness's

testimony. In the opinion, the PCR judge made the following statements regarding the credibility of Petitioner:

> Eustace Cromer testified that he had met with his trial attorney, Michael DeBlis[s] on several occasions prior to trial in court and one time at his office. Petitioner informed Mr. DeBliss that Bryant Jackson, the victim, was told by a man named "Shariff" that it was Shariff that had shot him on the night in question. In addition, Petitioner informed Mr. DeBlis[s] that he had alibi witnesses. Petitioner claimed that he was with Shakeeda Covington, Al-Tariq Little, and a woman named Kiki when the victim was shot. Petitioner testified that no notice of alibi was filed and that no investigation had been conducted.
>
> I find Petitioner's testimony had little credibility due to his tone and demeanor combined with the extreme motive to fabricate.

(PCR Opinion, Attached as Document 26 to ECF No. 16, at 8).

The PCR court next addressed the testimony of Petitioner's friend and alibi witness, Al-Tariq Little, finding incredible Little's explanation for why he did not provide testimony as to Petitioner's alleged alibi at trial.

> Al-Tariq Little testified that on October 16, 1995, that he was with the Petitioner, Shakeeda Covinton, and a woman named "Nakia." Mr. Little testified that Petitioner never left his presence the entire evening and that the evening was spent at the house drinking and smoking marijuana. When asked by [the State] if Mr. Little had made attempts to notify anyone that he was with Petitioner at the time of the shooting[,] Mr. Little stated that he was not called upon to testify at the trial and that he had "situations" and "little warrants" which precluded him from coming to court. Mr. Little also testified that the Petitioner did not make any attempts to have Mr. Little clear his name despite the fact they were living together for a substantial period of time prior to trial.
>
> I find Mr. Little to have no credibility. Mr. Little did not come forward either prior to or during the trial despite living with the Petitioner. Mr. Little's reasons for not coming forward were

6

> unpersuasive. Furthermore, his intoxication, by both alcohol and marijuana, on the night [in] question may have clouded his recollection.

(*Id.*).

The PCR court then evaluated the credibility of the victim, Bryant Jackson. The court found that Jackson's testimony also lacked credibility:

> Bryant Jackson testified that at Petitioner's trial he stated that [a] man named Shariff had shot him and not Petitioner. The basis for this knowledge was that Mr. Jackson had served time in Annandale Youth Correctional Facility and that Shariff approached him upon his return and told Mr. Jackson that he had in fact been the shooter. Mr. Jackson also testified that he had an argument with Shariff in the weeks prior to the shooting over drug turf. In addition, Mr. Jackson testified that he had seen Shariff the day before the evidentiary hearing.
>
> I find Mr. Jackson's testimony lacking in credibility due to his tone and demeanor. Furthermore, Mr. Jackson did not have an independent basis for identifying the shooter at trial or at the hearing [as Shariff].

(*Id.* at 8-9).

Thereafter, the PCR court discussed the testimony of Petitioner's trial counsel, Michael J. DeBliss. Unlike Petitioner, Little, and Jackson, the court found credible counsel's testimony that he was unable to locate Bryant Jackson to testify at trial, and that he did not recall many of the specific facts of Petitioner's case.

> Michael J. DeBliss testified that he drafted an investigation request form requiring an investigator to attempt to contact Bryant Jackson as the[re] was a possibility of his recantation. The investigator responded that his attempt to contact Mr. Jackson was unsuccessful. Mr. DeBlis[s] had a poor recollection of the case due to the number of cases he had been involved with since and due to the lapse of time.

7

> I found Mr. DeBliss to be credible. Mr. DeBliss was forthcoming with the information he could recall and was cooperative in the examination by both parties.

(*Id.* at 9).

Based on these credibility findings, the PCR Court denied the PCR Petition, rejecting both Petitioner's claim that his counsel had failed to investigate his alibi defense and that counsel had failed to interview the victim about the claim that "Shariff" had shot him. (*Id.* at 12). Specifically, the PCR Court found that

> Both assertions fail to rise to ineffective assistance of counsel. As for the alibi defense, the only individual who testified that the Petitioner had an alibi and had informed trial counsel of same, is the Petitioner. Of the three alleged alibi witnesses, only one could be found to testify at the hearing, Al-Tariq Little. Mr. Little simply lacked credibility. It was especially telling that despite living with the Petitioner after the shooting, but before trial, that [Little] failed to come forward on Petitioner's behalf. Therefore, trial counsel's performance was not deficient because there was no corroboration that Petitioner had even informed him of the alibi and even if he had, the alibi lacked substantiation. Even if counsel's performance in this regard was deficient, it did not cause prejudice to the Petitioner.
>
> There is no basis for alleging that trial counsel failed to investigate and interview the victim. Trial counsel made an appropriate request and the investigator's attempt to contact him was unfruitful. Furthermore, trial counsel knew that the Petitioner could not and would not identify him as the shooter. The jury simply did not find that this rose to the level of reasonable doubt. Trial counsel made a good faith attempt to contact Mr. Jackson. Trial counsel's efforts were not deficient . . . [and] did not cause prejudice to the Petitioner.

(*Id.* at 12).

Petitioner appealed the PCR court's judgment, and the Appellate Division affirmed the trial court's ruling on October 29, 2009. (App. Div. Opinion attached as Document 28 to ECF No.

8

16). The New Jersey Supreme Court denied certification on April 22, 2010. *See State v. Weeks*, 201 N.J. 497 (2010). Petitioner thereafter filed this Petition on or about April 4, 2011.[4] (ECF No. 1). Petitioner subsequently filed a second PCR petition in the state trial court, which has since been denied as untimely and that denial affirmed by the Appellate Division. (*See* Second PCR Trial and Appellate opinions, Documents 30 and 33 attached to ECF No. 16).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), the district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall

---

[4] It is not entirely clear when Petitioner handed his Petition over to be mailed. The letter he attached to his Petition is dated March 25, 2011, but there is no date on the Petition itself. Both were received by the clerk's office on April 4, 2011. In any event, as is discussed below, the Petition would be untimely regardless, so this issue is immaterial.

not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state court, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.   Analysis**

**1.   This Petition was untimely filed.**

The State argues, and this Court agrees, that this petition should be dismissed as time barred. Petitions for a writ of habeas corpus brought pursuant to 28 U.S.C. 2254 are subject to a one year statute of limitations. 28 U.S.C. § 2244(d)(1). In most cases, including this one, the one year statute of limitations applicable to petitions brought under § 2254 begins to run on the

"date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court." *See Figueroa v. Buechele*, No. 15-1200, 2015 WL 1403829, at *2 (D.N.J. Mar. 25, 2015); *see also Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2009). The statute of limitations, however, is tolled during the pendency of a valid state court post-conviction review ("PCR"). *Figueroa*, 2015 WL 1403829 at *2.

Here, the New Jersey Supreme Court denied certification on direct review on April 3, 2001. As Petitioner did not file for certiorari, the statute of limitations began to run when the time to file a petition for certiorari had run ninety days later on July 2, 2001. Petitioner did not file his initial PCR petition until September 11, 2001. Seventy-one days had thus elapsed from the one year statute of limitations prior to the filing of the PCR petition. The New Jersey Supreme Court denied certification on the PCR petition on April 22, 2010.[5] Petitioner's application thus had to be filed February 10, 2011 to be filed within the one year provided by the statute of limitations, given the seventy one days that had elapsed prior to the PCR filing. Even giving Petitioner the benefit of the doubt and using the March 25, 2011, date of the letter attached to his petition, this petition was filed after the statute of limitations had run. This petition is, therefore, untimely under the statute.

---

[5] That Petitioner filed a second PCR petition *after* he filed this action does not provide a basis for tolling the statute of limitations. *See, e.g., Bryant v. Hendricks*, No. 01-21, 2007 WL 316518, at *3 n. 7 (D.N.J. Jan. 30, 2007) (Second PCR filed after statute had run does not toll statute of limitations and PCR petition filed PCR is not "properly filed" and thus could not suffice to establish tolling regardless, citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Ransome v. Holmes*, No. 12-4889, 2013 WL 6253668, at *3 (D.N.J. Dec. 4, 2013) (citing *Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004)).

11

The statute of limitations, however, is subject to certain equitable considerations. One such consideration is a showing of actual innocence. *See McQuiggin v. Perkins*, --- U.S. ---, ---, 133 S. Ct. 1924, 1934-46 (2013). In order to use actual innocence as a gateway claim to bypass the statute of limitations, Petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of" newly raised evidence. *Id.* at 1935. Any unexplained delays in presenting new evidence bears on the determination of "whether the petitioner has made the requisite showing." *Id.* It is not enough that a petitioner claim actual innocence, he must show actual innocence through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Claims for actual innocence are thus rarely successful, and will be granted in only in those exceptional cases where the "evidence of innocence [is] so strong that a court cannot have confidence in the outcome of the trial" as "no reasonable juror" could have convicted the petitioner. *McQuiggin*, 133 S. Ct. at 1936.

In his reply brief, Petitioner argues that, although his petition is time-barred, the petition should not be dismissed as such because he has made a claim of actual innocence. Petitioner argues that the "new evidence" he is required to provide is the testimony elicited at his PCR hearing in 2007. Petitioner, however, fails to make a showing of actual innocence. The only "new evidence" Petitioner points to are factual claims which were found incredible by the state trial court and upheld by the state appellate court: Petitioner's uncorroborated claim that he had told his attorney he had an alibi, Al-Tariq Little's claim that Petitioner spent the night of the shooting with him, and the testimony of the victim that he had been told by "Shariff" that "Shariff" had shot

12

him.  As to the "Shariff" issue, as the victim repudiated his identification of Petitioner and made the "Shariff" claim at trial, that claim in no way is new evidence.  Indeed, the jury heard that claim in Petitioner's criminal trial and convicted him in spite of it.

As to the alibi claim, Petitioner's new evidence is essentially made up of his testimony and that of his former roommate, Al-Tariq Little.  In raising his actual innocence claim and naming this testimony as his supporting evidence, Petitioner is effectively asking this court to overturn the PCR court's factual determination that, based upon their testimony and demeanor, both Petitioner and Little were completely lacking in credibility.  This Court finds that Petitioner has presented no evidence, let alone clear and convincing evidence, to suggest that the PCR court's factual determination was unreasonable.  As the PCR court found, the testimony that both Petitioner and his then roommate knew that Petitioner had an alibi, and that neither of them came forth to present that claim throughout the three years between Petitioner's arrest and conviction beggars belief.  The story these individuals presented in their PCR testimony is inherently incredible and thoroughly unbelievable.  As such, the PCR Court's findings, as upheld by the Appellate Division, were not based upon an unreasonable determination of the facts and are thus presumed correct by this Court.  28 U.S.C. § 2254(d)(2)-(e)(1).  As the testimony upon which Petitioner relies has been rejected as lacking in credibility, Petitioner has not presented the "new credible evidence" required to make a showing of actual innocence.  *Hubbard*, 378 F.3d at 339-40.  Even if the Court did consider that evidence, however, this Court is satisfied that it is not sufficient to undermine this Court's confidence in the outcome of Petitioner's trial, and as such Petitioner has failed to make a showing of actual innocence.  *McQuiggin*, 133 S. Ct. at 1936.  As Petitioner has failed to make a showing of actual innocence, Petitioner's claim of innocence does not warrant the

consideration of his claims after the running of the statute of limitations. The Petition must therefore be dismissed as time-barred.[6]

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), Petitioner may not appeal from a final order in a habeas proceeding where Petitioner's detention arises out of a state court proceeding unless Petitioner has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

---

[6] This Court notes that although Petitioner does not argue it in his reply brief, he did attach the March 25, 2011, letter to his petition which claimed he did not receive notice of the certification denial on his PCR petition until June of 2010. To the extent that this letter, supported only by the fact that the Public Defender wrote Petitioner on May 4, 2010 (*see* Document 1 attached to ECF No. 1), informing him of the New Jersey Supreme Court's decision, is meant to raise equitable tolling, this Court rejects such an argument. Equitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair . . . because the petitioner has in some extraordinary way . . . been prevented from asserting his or her rights." *Miller v. New Jersey Dep't of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998); *see also United States v. Thomas*, 713 F.3d 165, 174 (3d Cir. 2013). Equitable tolling should be permitted only sparingly, and only if Petitioner shows that "he has been pursuing his rights diligently, and . . . that some extraordinary circumstance stood in his way and prevented timely filing." *Thomas*, 713 F.3d at 174 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Petitioner has presented no evidence that he diligently pursued his rights during the period between June 2010 and March 2011, nor that any extraordinary circumstance prevented his timely filing of his petition. As such, equitable tolling is not warranted here. *See, e.g., Thomas*, 713 F.3d at 174-75 (rejecting a request for equitable tolling where the petitioner argued he should receive an extension of time because he spent 120 days out of the one year statute of limitations without access to legal materials due to a prison transfer); *Fahy v Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (in non-capital cases "attorney error, miscalculation, inadequate research or other mistakes" are inadequate to warrant equitable tolling).

As Petitioner's claims are time barred, he has failed to make a substantial showing that he was denied a constitutional right, and no certificate of appealability shall therefore issue.

## IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DISMISSED as time barred, and no certificate of appealability shall issue.   An appropriate order follows.


s/ Susan D. Wigenton, U.S.D.J.


Orig:        Clerk
cc:          Parties
             Magistrate Judge Steven C. Mannion